## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL PAINTERS AND ALLIED     ) <br> TRADES INDUSTRY PENSION FUND     ) <br> GARY J. MEYERS, in his official capacity as   ) <br>    a fiduciary,     ) <br> 1750 New York Avenue, N.W.     ) <br> Washington, DC 20006-5387     ) <br>     ) <br>                   Plaintiffs   ) <br>    v.     ) <br>     ) <br> ROGERS INDUSTRIES, LLC     ) <br>   d/b/a Rogers Industries     ) <br> 4800 Coyle Road     ) <br> Owings Mills, MD 21117     ) <br>     ) <br>                  Defendant   ) | CIVIL ACTION NO. |

## COMPLAINT

Plaintiffs, by undersigned counsel, complain as follows.

## JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action under 29 U.S.C. §§1132, 1145; 29 U.S.C. §185(a); and/or 28 U.S.C. §1331. The claims asserted are all made under federal statutes or federal common law, but the supplemental jurisdiction of the Court under 28 U.S.C. §1367(a) also extends to any claims that are found to lie under state law.

2.      A copy of this Complaint is being served on the Secretary of Labor and the Secretary of Treasury of the United States by certified mail in accordance with 29 U.S.C. §1132(h).

## VENUE

3.      Venue lies in the District of Columbia under 29 U.S.C. §1132(e)(2), 29 U.S.C. §185(a) and/or 28 U.S.C. §1391(b).

194305.1

## PARTIES

4.      Plaintiff International Painters and Allied Trades Industry Pension Fund ("Fund"

or "Pension Fund") is a trust fund established under 29 U.S.C. §186(c)(5).  Its Trustees are the

"named fiduciary," "plan administrator" and "plan sponsor" and each is an individual

"fiduciary," within the meaning of 29 U.S.C. §§1102(a), 1002(16), (21), for the International

Painters and Allied Trades Industry Pension Plan ("Pension Plan") and International Painters and

Allied Trades Industry Annuity Plan ("Annuity Plan").  The Pension Plan and Annuity Plan are

each a "multiemployer plan," "employee benefit plan" and "employee benefit pension plan"

within the meaning of 29 U.S.C. §1002(37), (2) and (3).  The Fund, Pension Plan and Annuity

Plan maintain their principal place of business and are administered from an office in this district

at the address for the Fund in the caption of this Complaint.

5.      Plaintiff, Gary J. Meyers ("Meyers" and, together with "Fund," "Plaintiffs") is a

fiduciary of the Funds within the meaning of 29 U.S.C. §1002(21) with respect to collection of

contributions due the Funds and related matters. He has a business address as listed in the caption

and is authorized to bring this action on behalf of all Trustees of the Fund and the Funds as

organizations.

6.      The Fund and Meyers are authorized collection fiduciary(ies) and agent(s) for:

        (a)      the Pension Plan,

        (b)      the Annuity Plan,

        (c)      the Political Action Together Fund, which includes the Political Action

Together – Legislative and Educational Committee and  Political Action Together – Political

Committee (jointly or severally, "PAT Fund"), which is an unincorporated association or fund

established pursuant to 2 U.S.C. §431 et seq. by the International Union of Painters and Allied Trades for the purpose of advancing the political interests of its members by lawfully influencing the selection, nomination, election and/or appointment of individuals for political office,

(d)     the Finishing Trades Institute f/k/a International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund ("FTI"), which is a trust fund established under 29 U.S.C. §186(c)(5) and "multiemployer plans" and "employee benefit plan" and "employee welfare benefit plan" within the meaning of 29 U.S.C. §1002(37), (1), and (3), and

(e)     the Painters and Allied Trades Labor Management Cooperation Initiative ("LMCI"), which is an entity that performs certain employer association functions, but is also an unincorporated organization established under 29 U.S.C. §186(c)(9).

7.     The PAT Fund, FTI and LMCI are jointly or severally referenced as "Ancillary Funds" and maintain their principal place of business and are administered from an office in this district.

8.     The Fund and Meyers, in their capacity as authorized collection fiduciary(ies) and agent(s) sue on behalf of the Pension Plan, the Annuity Plan, the PAT Fund, FTI and LMCI.

9.     The Fund, Pension Plan, Annuity Plan, FTI and, as allowed by law, LMCI, are jointly or severally referenced as the "ERISA Funds." The ERISA Funds, LMCI and PAT Fund are hereinafter jointly or severally referenced as the "Funds."

10.     Defendant, Rogers Industries, LLC, d/b/a Rogers Industries, ("Company") is Maryland limited liability company and an employer in an industry affecting commerce within the meaning of 29 U.S.C. §§152(2), (6) and (7), 1002(5), (11) and (12) with a business office at the address listed in the caption. The Company does business with the Fund that is sufficient to

create personal jurisdiction over the Company in this district and a substantial part of the events or omissions giving rise to the claim occurred from transactions with the Funds' office(s) in this district.

## COMMON FACTS

11.    At all times relevant to this action, the Company was party to or agreed to abide by the terms and conditions of a collective bargaining agreement(s) (singly or jointly, "Labor Contracts") with one or more local labor unions or district councils affiliated with the International Union of Painters and Allied Trades, AFL-CIO, CLC (the locals, district councils and International being referred to jointly as "Union"). A true and correct copy of the cover page, table of contents, contribution provisions and joinder or signature page of the Labor Contract is attached as Exhibit 1.

12.    The Company also signed or agreed to abide by the terms of the Agreement and Declaration of Trust of the Fund ("Trust Agreement"), made between certain employers and employee representatives in an industry(ies) affecting interstate commerce to promote stable and peaceful labor relations, and the plan documents for the ERISA Funds. A true and correct copy of the Trust Agreement for the Fund is attached as Exhibit 2. True and correct copies of the cover page, table of contents §§10.07, 10.08, 10.11, and 10.12 and signature page of the Pension Plan are attached as Exhibit 3, and the Annuity Plan has parallel terms.

13.    Under the Labor Contracts, Trust Agreement, plan documents of the ERISA Funds or other documents, the Company agreed:

(a)     To make full and timely payment on a monthly basis to the Funds, as required by the Labor Contracts, Trust Agreement and plan documents. Ex. 2, p.15 (Art.VI, §2); Ex. 3, §10.07.

(b)     To file monthly remittance reports with the Funds detailing all employees or work for which contributions were required under the Labor Contract. Ex. 2, pp.15-16 (Art.VI, §§3, 5).

(c)     To produce, upon request by the Funds, all books and records deemed necessary to conduct an audit of the Company's records concerning its obligations to the Funds and to pay the cost of the audit if found to be delinquent or in violation of the Trust Agreement or Plan. Ex. 2, pp.16-17 (Art.VI, § 6).

(d)     To pay liquidated damages, late charges, interest, audit costs, and all costs of litigation, including attorneys' fees, expended by the Funds to collect any amounts due as a consequence of the Company's failure to comply with its contractual and statutory obligations described in Subparagraphs (a), (b) and (c). Ex. 2, pp. 16-17 (Art.VI, §§4, 6); Ex. 3, §§10.07, 10.12.

14.     The Company submitted to an audit on May 2, 2006 for the period of August 1, 2004 through March 31, 2006.

15.     The audit performed on May 2, 2006 revealed deficiencies.

16.     All conditions precedent to this lawsuit or the relief it seeks have been satisfied.

## COUNT I - CONTRIBUTIONS UNDER ERISA - SUM CERTAIN

## PLAINTIFFS

v.

## COMPANY

17.    The allegations of Paragraph 1 through 16 are incorporated by reference as if fully restated.

18.    Company has failed to pay to the ERISA Funds amounts due under the Labor Contracts, Trust Agreements and Plan from July 2004 to March 2006 in at least the sum of $28,289.22 in violation of 29 U.S.C. §1145 based upon information presently available to the ERISA Funds as a result of the audit conducted on May 2, 2006.

19.    The ERISA Funds are adversely affected and damaged by the Company's violation of 29 U.S.C. §1145.

**WHEREFORE**, Plaintiffs ask that the Court:

(1)    Enter judgment against Company in favor of the Plaintiffs, for the benefit of the ERISA Funds, for at least the sum certain amount plus any additional amounts which may become due during the pendency of this lawsuit together with late charges, interest at the rate(s) prescribed by 26 U.S.C. §6621 from the due date for payment until the date of actual payment, liquidated damages equal to the greater of the interest on the unpaid contributions or liquidated damages provided by the documents governing the ERISA Funds or statute, the cost of any audit and reasonable attorneys' fees and costs incurred in this action or the collection or enforcement of any judgment all as provided under the Trust Agreements, plan documents of the ERISA Funds, and 29 U.S.C. §1132(g)(2).

(2)     Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

## COUNT II - CONTRIBUTIONS UNDER CONTRACT - SUM CERTAIN

### PLAINTIFFS

### v.

### COMPANY

20.     The allegations of Paragraphs 1 through 19 are incorporated by reference as if fully restated.

21.     The Company has not paid the Funds as required by the Labor Contract, and other documents incorporated by the Labor Contract, such as the Trust Agreements or plan documents of the ERISA Funds.

22.     Plaintiffs have been damaged as a proximate result of the breach of Labor Contract and/or its incorporated documents by Company.

**WHEREFORE,** Plaintiffs ask that the Court:

(1)     Enter judgment against the Company and in favor of Plaintiffs, for the benefit of the Funds, for the sum certain currently due plus any additional amounts which become due and owing during the pendency of this litigation or as a result of an audit together with liquidated damages, interest and costs, including reasonable attorneys' fees incurred in this action or the collection or enforcement of any judgment, as provided in the Labor Contract and Trust Agreements.

(2)     Grant such other or further relief, legal or equitable, as may be just, necessary or appropriate.

Respectfully submitted,

JENNINGS SIGMOND, P.C.

KENT CPREK
Bar No. 478231
JUDITH SZNYTER*
The Penn Mutual Towers, 16th Floor
510 Walnut Street, Independence Square
Philadelphia, PA 19106-3683
(215) 351-0615/0641
Attorneys for Plaintiffs

Date: 3/20/2008

*Application for Pro Hac Admission of JUDITH SZNYTER shall be made at the appropriate time.

# Agreement



### Between

## PAINTERS, DRYWALL FINISHERS, GLAZIERS AND ALLIED TRADES DISTRICT COUNCIL NO. 51

### of the

## INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES, AFL-CIO, CLC

### and the

## PAINTING, DECORATING, DRYWALL FINISHING, GLASS AND GLAZING CONTRACTORS

## of Washington, D.C., Maryland, Virginia, North Carolina and Vicinities 2003-2006

EXHIBIT

# TABLE OF CONTENTS

|  |  | page |
|---|---|---|
|  | AGREEMENT ................................................... | 3 |
| ARTICLE I | RECOGNITION ................................................. | 3 |
| ARTICLE II | JURISDICTION ................................................. | 3 |
| ARTICLE III | CLASSIFICATIONS & DEFINITIONS .......................... | 8 |
| ARTICLE IV | UNION SECURITY .............................................. | 10 |
| ARTICLE V | FUNCTIONS OF MANAGEMENT ............................... | 10 |
| ARTICLE VI | OUT OF GEOGRAPHIC JURISDICTION WORK ............... | 11 |
| ARTICLE VII | COMPLIANCE WITH LAWS AND REGULATIONS ........... | 12 |
| ARTICLE VIII | PAST PRACTICE CLAUSE ..................................... | 12 |
| ARTICLE IX | NON-DISCRIMINATION CLAUSE ............................. | 13 |
| ARTICLE X | SUPREMACY CLAUSE ......................................... | 13 |
| ARTICLE XI | SUBCONTRACTING CLAUSE ................................. | 13 |
| ARTICLE XII | PRESERVATION OF WORK ................................... | 14 |
| ARTICLE XIII | SUCCESSOR CLAUSE ......................................... | 15 |
| ARTICLE XIV | GENERAL SAVINGS CLAUSE ................................ | 15 |
| ARTICLE XV | GENERAL CLAUSES ........................................... | 16 |
| ARTICLE XVI | HIRING PROCEDURE .......................................... | 17 |
| ARTICLE XVII | SAFETY AND CODE COMPLIANCE .......................... | 18 |
| ARTICLE XVIII | HEALTH & SAFETY AND SKILL ENHANCEMENT TRAINING ............ | 19 |
| ARTICLE XIX | ORGANIZING OBLIGATION .................................. | 19 |
| ARTICLE XX | STEWARDS ..................................................... | 20 |
| ARTICLE XXI | TRUST FUNDS, CONTRIBUTIONS, COLLECTIONS AND SECURITIES ... | 20 |
| ARTICLE XXII | JOINT TRADE BOARD ......................................... | 31 |
| ARTICLE XXIII | GRIEVANCES AND ARBITRATION ........................... | 32 |
| ARTICLE XXIV | MARKET RECOVERY, ORGANIZING AND MAINTENANCE OF WORK . | 34 |
| ARTICLE XXV | CHECK OFF OF ADMINISTRATIVE DUES ................... | 36 |
| ARTICLE XXVI | DURATION CLAUSE ........................................... | 37 |

## GLAZIERS TRADE SPECIFICS AND WORKING CONDITIONS

| ARTICLE XXVII | GEOGRAPHIC JURISDICTION ................................ | 40 |
|---|---|---|
| ARTICLE XXVIII | HOURS OF WORK, HOLIDAYS AND OVERTIME ............ | 40 |
| ARTICLE XXIX | WAGES AND FRINGE BENEFIT CONTRIBUTIONS .......... | 41 |
| ARTICLE XXX | WORKING CONDITIONS ...................................... | 45 |

## PAINTERS & DRYWALL FINISHERS TRADE SPECIFICS AND WORKING CONDITIONS

| ARTICLE XXXI | GEOGRAPHIC JURISDICTION ................................ | 49 |
|---|---|---|
| ARTICLE XXXII | HOURS OF WORK, HOLIDAYS AND OVERTIME ............ | 50 |
| ARTICLE XXXIII | WAGES AND FRINGE BENEFIT CONTRIBUTIONS .......... | 51 |
| ARTICLE XXXIV | WORKING CONDITIONS ...................................... | 57 |

# ARTICLE XX
## STEWARDS

**SECTION 1.** Stewards shall be designated in all shops by the Union. The duties of the Stewards shall be as follows: 1) to see that the provisions of this Agreement are observed; 2) to receive and endeavor to adjust at the first step, all grievances which may be submitted to them. The Stewards shall be allowed sufficient and reasonable time during regular working hours to carry on any activities necessary to discharge their duties. They shall have authority to check the identification of individuals employed on the job or in the shop. The Employer shall not dismiss or otherwise discipline any Steward for properly performing his or her duties, nor shall the Employer dismiss or otherwise discipline any employee for making a complaint to the Steward or giving evidence with respect to an alleged violation of this Agreement. The Steward shall have top seniority on the job to which he or she is assigned, as long as he or she remains in the position of Steward. The Steward shall perform work in the same manner as any other employee and shall cooperate with the supervisor to expedite the progress of the work. Stewards may be relieved of their duties at any time at the discretion of the Union or when they do not possess the qualified skills to perform the work available.

**SECTION 2.** It shall also be the duty of the Steward to see that all employees have their working cards or permits.

**SECTION 3.** The Union reserves the right to withdraw employees covered by this Agreement from any job where the Stewards or Business Representatives or Business Manager/Secretary-Treasurer of the District Council are prohibited, either from entering upon the premises of the job to inspect and investigate working conditions, or from conducting an adequate inspection, investigation and report of such working conditions.

# ARTICLE XXI
## TRUST FUNDS, CONTRIBUTIONS, COLLECTIONS AND SECURITIES

**SECTION 1.**

### A. FRINGE BENEFIT CONTRIBUTIONS

No later than the twentieth (25) day of each and every month the Employer shall mail to the Trustees of their designated depository, a check or checks being made payable as designated to cover payment for the previous month to the Health and Welfare Fund, Pension Fund,

Apprenticeship and Training Fund, Political Action Fund, Administrative Dues Check-Off and any other fund that is established within this Agreement. In addition, the Employer will properly complete and mail such forms and records as designated by the Trustees of said Fund. Each or any of the Funds referenced in this Agreement may engage a certified public accounting firm to periodically audit the books, payroll and wage records of any contributing Employer(s) for the purpose, of verifying contributions and deductions due and owing to the respective Fund(s) and/or liabilities for contributions due and owing to such Fund.

In the event such audit discloses for any period a deficiency in the payments reported and paid/not paid and the outstanding deficiency owed is greater than 10% of the amount originally reported for such period under this Agreement, the cost of the audit will be borne by the Employer.

In addition to all other remedies available to the parties and/or the various Fringe Benefit Funds with respect to "delinquent" Employers, the Union may treat any failure by an Employer to satisfy a delinquency as a breach of this Agreement. In such event, the Union may, in addition to any other remedy that may be available to it, and without being limited by any "no strike" obligation that may appear in this Agreement or be implicit in its terms, remove its members from any job(s) of such delinquent Employer. A removal of manpower by the Union, pursuant to this provision, shall not be construed as a "termination" of this Agreement with respect to any affected Employer.

## B. BONDS/SECURITY FOR FUND PAYMENTS

The sum of one thousand five hundred dollars ($1,500) or a surety bond may be required of not less than five thousand dollars ($5,000) and no more than fifty thousand dollars ($50,000), at the discretion of District Council 51, in guaranteeing payment of any wages, fringe benefits and deductions by any signatory Employer.

In lieu of a "bond", a "Letter of Credit" or "Certified Check" to be held in escrow (no interest to be paid) is acceptable. The amount of which may be adjusted for new Employers at the discretion of the District Council. The District Council and/or Trustee's may require accelerated payments if any Employer(s) payments are irregular.

## SECTION 2. INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES UNION AND INDUSTRY PENSION FUND AND INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES UNION AND INDUSTRY ANNUITY PLAN

The only agreement between the Employer(s) and the Union parties to this Agreement regarding pensions or retirement for employees covered by this Agreement is as follows:

1. a.   Commencing with the 16th day of June 2003, and for the duration of the Agreement, and any renewals or extension thereof, the Employer agrees to make payments to the International Union of Painters and Allied Trades Union and Industry Pension Fund for each employee covered by this Agreement, as follows:

b.   For each hour or portion thereof for which an employee receives pay, the Employer shall make a contribution in accordance with the schedule in Article XXIX Section 2 or Article XXXIII Section 1 to the above named Pension Fund and/or to the International Union of Painters and/or Allied Trades Union and Industry Annuity Plan.

c.   For the purpose of this Article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

d.   Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and probationary employees.

e.   The payments to the Pension Fund required above shall be made to the International Union of Painters and Allied Trades Union and Industry Pension Fund, which was established under an Agreement and Declaration of Trust, dated April 1, 1967. The Employer hereby agrees to be bound by and to the said Agreement and Declaration of Trust, as amended from time to time, as though he had actually signed the same.

2. The Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to the said Agreement and Declaration of Trust, as amended from time to time.

3. All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees may at any time conduct an audit in accordance with Article VI, Section 6 of the said Agreement and Declaration of Trust.

4. If an Employer fails to make contributions to the Pension Fund within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause that may be provided or set forth elsewhere in this Agreement.

5. The Pension Plan and Annuity Plan adopted by the Trustees shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the International Union of Painters and Allied Trades Union and Industry Pension Fund as a deduction for income tax purposes.

## SECTION 3. THE PAINTERS AND ALLIED TRADES LABOR MANAGEMENT COOPERATION INITIATIVE

1.  a. Commencing with the 16th day of June 2003, and for the duration of the Agreement, and any renewals or extension thereof, the Employer agrees to make payments to The Painters and Allied Trades Labor Management Cooperation Initiative (LMCI) for each employee covered by this Agreement, as follows:

    b. For each hour or portion thereof, for which an employee receives pay, the Employer shall make a contribution of five (.05) cents to the Fund.

    c. For the purpose of this Article, each hour paid for, including hours attributable to show up time, and other hours for which pay is received by the employee in accordance with the Agreement, shall be counted as hours for which contributions are payable.

    d. Contributions shall be paid on behalf of any employee starting with the employee's first day of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, helpers, trainees, and probationary employees.

    e. The Employer and Union signatory to this Agreement agree to be bound by and to the Agreement and Declaration of Trust, as amended from time to time, establishing the Fund.

2. The Employer hereby irrevocably designates as its representatives on the Board of Trustees

such Trustees as are now serving, or who will in the future serve, as Employer Trustees, together with their successors.

3. All contributions shall be made at such time and in such manner as the Trustees require; and the Trustees may at any time conduct an audit in accordance with the Agreement and Declaration of Trust.

4. If an Employer fails to make contributions to the Fund within twenty (20) days after the date required by the Trustees, the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, any other provision hereof to the contrary notwithstanding, and the Employer shall be liable for all costs of collection of the payments due together with attorney fees and such penalties as may be assessed by the Trustees. The Employer's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement.

## SECTION 4. HEALTH AND WELFARE FUND

1. The parties to this Agreement agree to maintain a Trust Fund known as the IUPAT District Council No. 51 Health and Welfare Fund. The purpose of this Fund is to provide life insurance, sick benefits, hospitalization, medical fees, accident, surgical and dismemberment benefits for, but not limited to, eligible journeypersons, apprentices, and their families, in such form and amount as the Trustees of the Fund may determine.

2. The Fund shall be administered pursuant to an Agreement and Declaration of Trust administered jointly by an equal number of representatives of the Employers and the Union, which Agreement and Declaration of Trust together with any amendments thereto which may be adopted shall be considered as part of this Agreement as though set forth here in full. The parties to this Agreement agree to be bound by all actions taken by the Trustees pursuant to the Agreement and Declaration of Trust.

3. The Employer agrees to contribute an amount for each hour worked, including overtime hours, by each journeyperson and apprentice, in their employ to the Trust Fund at such time and in such manner as the Trustees require. The Trustees shall have the authority to have a representative selected by them audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Trust Fund. The contribution

24

required herein shall be sent to the administrator of the Trust Fund in accordance with the schedule detailed in Article XXIX Section 2 or Article XXXIII Section 1.

4. Each Employer may be required to have on deposit with the Trustees of the Trust Fund the sum of one thousand five hundred dollars ($1,500) or a Surety Bond in the amount of five thousand dollar ($5,000), as a minimum and not to exceed an amount of fifty thousand dollars ($50,000) on the date of signing this Agreement. In lieu of a "bond", a "Letter of Credit" or "Certified Check" to be held in escrow (no interest to be paid) will be acceptable. Once any of the acceptable forms of deposit have been made, The Employer will not be required to make such a deposit again, unless a violation for non-payment has been committed whereby the Trustees are required to file a claim against the original Bond, Certified Check or Letter of Credit, for which the Trustees may then order the Employer to post a new or higher deposit amount, or as the Trustees otherwise deem appropriate under the circumstances.

5. All Employers from jurisdictions other than the jurisdiction of District Council No. 51 may be required to deposit with the Trustees at the time they become parties to this Agreement the sum of one thousand five hundred dollars ($1,500) or a Surety Bond, Certified Check, or Letter of Credit in the amount of five thousand dollar ($5,000), as a minimum, and not to exceed an amount of fifty thousand dollars ($50,000) with the Trust Funds. Such Employers from other jurisdictions shall contribute to the Trust Fund currently an amount for each hour worked, including overtime hours each journeyperson and apprentice, including temporary employees in their employ; in accordance with the schedule detailed in Article XXIX Section 2 or Article XXXIII Section 1; provided, however, that upon the completion of jobs to be performed within the jurisdiction of District Council No. 51, such deposit may be credited against the per hour contributions owed for the final period and the excess deposit, if any, as of the time of final payroll period shall be returned to the aforesaid Employer.

6. An Employer who fails to make contributions to this Trust Fund on the due date (25th of each month) and in the manner determined by the Trustees shall be considered to have violated this Agreement and may be rendered ineligible to hire members of the Union, as determined by the Union, provided that such ineligibility shall not serve to terminate this Agreement and shall not relieve the Employer from its continuing obligation to comply with the terms of this Agreement. The Union and/or the Trustees shall have the right to take whatever steps are necessary to secure compliance with this Agreement, including the removal of manpower. The Employer shall be

25

liable for all statutory remedies available under ERISA statute 29 U.S.C. 1132(g)(2), including interest, liquidated damages equal to 20% of the delinquent principal, audit costs, and all costs of collection of the payments due plus attorneys' fees and costs. The Employer's liability for payment of any amount under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be set forth in this Agreement; however, the Trustees may in their discretion submit disputes regarding collections, liquidated damages and any and all amounts due to the Trust Funds to arbitration through the American Arbitration Association.

## SECTION 5. THE INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES JOINT APPRENTICESHIP AND TRAINING FUND (IUPAT-JATF)

The Agreement between the Employer(s) and Union parties to this agreement regarding payments to the International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund (IUPAT-JATF) is as follows:

1. Commencing with the 16th day of June, 2003 and for the duration of this Agreement, and any renewals or extensions thereof, the Employer agrees to make payments to the International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund (IUPAT-JATF) for each employee covered by this Agreement, as follows:

a) For each hour or portion of an hour for which an employee receives pay, the Employer shall make a contribution of five cents (.05) to the above named Apprenticeship Fund.

b) Contributions shall be paid on behalf of any employee starting with the employee's first hour of employment in a job classification covered by this Agreement. This includes, but is not limited to, apprentices, journeypersons, and utility workers.

c) The payments to the Apprenticeship Fund required above should be made to the "International Union of Painters and Allied Trades Joint Apprenticeship and Training Fund (IUPAT-JATF)" which was established under an Agreement and Declaration of Trust, effective May 1, 1995. The Employer hereby agrees to be bound by and to said Agreement and Declaration of Trust as though it had actually signed the same.

2). The Employer hereby irrevocably designates as its representatives on the Board of Trustees of the International Fund (IUPAT-JATF) such Trustees as are now serving, or who will in the future serve, as Employer Trustees as are now serving, or who will in the future serve, as

26

Employer Trustees, together with their successors, as provided for in the aforesaid Trust Indenture.

> (a)The Union hereby irrevocably designates as its    representatives on the Board of Trustees of the International Fund (IUPAT-JATF) such Trustees as are now serving, or who will in the future serve, as Labor Trustees, together with their successors, as provided for in the aforesaid Trust Indenture.

> (b)The parties hereto further agree to be bound by all actions taken by the Trustees of the International Fund (IUPAT-JATF) pursuant to the said Agreement and Declaration of Trust.

3) All contributions shall be made at such time and in such manner as the Trustees require, and the Trustees shall have the authority to have a Certified Public Accountant audit the payroll and wage records of the Employer for the purpose of determining the accuracy of contributions to the Apprenticeship Fund.

4) If an Employer fails to make contributions to this Trust Fund on the due date (25th of each month) and in the manner determined by the Trustees, such failure shall be deemed a violation of this agreement, and the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, and the Contractor shall be liable for all statutory remedies available under the ERISA statute, 29 U.S.C. 1132(g)(2), including interest, liquidated damages equal to 20% of the delinquent principal, audit costs, and all costs of collection including attorney's fees and costs.  The Contractor's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement; however, the Trustees may in their discretion submit disputes regarding collections, liquidated damages and any and all amounts due to the Trust Funds to arbitration through the American Arbitration Association.

5) The Apprenticeship Plan adopted by the Trustees of said Apprenticeship Funds shall at all times conform with the requirements of the Internal Revenue Code and other applicable laws and regulations so as to enable the Employer at all times to treat contributions to the Apprenticeship Fund as a deduction for income tax purposes.

27

## SECTION 6.  DISTRICT COUNCIL 51 JOINT APPRENTICESHIP TRAINING AND JOURNEYMAN EDUCATION PROGRAM

1. The District Council 51 Joint Apprenticeship Training and Journeyman Education Fund is hereby established for the sole purpose of training and educating apprentices and journeypersons. The fund shall be governed and controlled by the Board of Trustees of the District Council 51 Joint Apprenticeship Training and Journeyman Education Fund and will establish eligibility requirements for all applicants for apprenticeship.  Terms of apprenticeship shall be described in the Standards of the Training Committee(s).

2.    The Program for which the Fund is to be administered by the Board is as follows: To promote the Apprenticeship Training and Journeyman Education Program established and maintained by the parties to this fund by rendering assistance thereto by various means including the supplying of promotional materials for the Program, educational and training materials for use in conducting the Program, and administrative assistance in the conduct of the Program.

3.   The Employer hereby agrees to make contributions and deductions at the then current amounts as set forth in Article XXIX Section 2 and Article XXXIII Section 1 for each hour or portion thereof, for which an employee receives pay and submit same to the District Council 51 Joint Apprenticeship Training and Journeyman Education Fund.

4.   An Employer who fails to make contributions to this Trust Fund on the due date (25th of each month) and in the manner determined by the Trustees shall be considered to have violated this Agreement and may be rendered ineligible to hire members of the Union, as determined by the Union, provided that such ineligibility shall not serve to terminate this Agreement and shall not relieve the Employer from its continuing obligation to comply with the terms of this Agreement. The Union or the Trustees shall have the right to take whatever steps are necessary to secure compliance with this Agreement, and the Employer shall be liable for all statutory remedies available under ERISA statute 29 U.S.C. 1132(g)(2), including interest, liquidated damages equal to 20% of the delinquent principal, audit costs, and all costs of collection of the payments due plus attorneys' fees and costs. The Employer's liability for payment of any amount under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be set forth in this Agreement; however, the Trustees may in their

28

discretion submit disputes regarding collections, liquidated damages and any and all amounts due to the Trust Funds to arbitration through the American Arbitration Association.

5. CONDITIONS FOR WORKING APPRENTICES SHALL BE:

    a. All apprentices shall be trained in accordance with both Federal and State Apprentice Regulations.

    b. Any apprentice employed will be indentured within 90 days of the date employed. He or she at all times during the work shift will work under the supervision of a journeyperson. All apprentices must attend related instruction for a period of and at a place designated by the Joint Apprenticeship Committee(s) and Trustees. All Employers agree to and support the Committee's and/or Trustees' obligations and decisions on training and educating apprentices.

6. All signatory employers shall comply with all State and Federal laws, specifically, Federal Act, 29 Code of Federal Regulations-Part 30.

7. Each Employer shall employ and train apprentices at a ratio of one (1) apprentice to every three (3) journeypersons employed by the Employer, with approval of the District Council such ratio may be increased to one (1) apprentice to every one (1) journeyperson.

8. APPRENTICE WAGES, FRINGE BENEFITS AND DEDUCTIONS

Apprentices shall be paid a percentage of the Journeyperson's Base Rate with all then current fringe benefit contributions and deductions as set forth in Article XXIX Section 2 and Article XXXIII Section 1. Apprentices shall be paid the "appropriate" percentage of the Journeyperson's wage rate as follows:

    Painters/ Decorators/Wall Covers & Drywall Finishers

| | |
|---|---|
| 1st Year | 55% |
| 2nd Year | 70% |
| 3rd Year | 85% |

    Glass & Glazing

| | |
|---|---|
| 1st Year | 55% |
| 2nd Year | 70% |

3rd Year        80%

4th Year        90%

9. The Employer hereby irrevocably designates as its representatives on the Board of Trustees such trustees as are now serving, or who will in the future serve, as employer trustees, together with their successors. The Employer further agrees to be bound by all actions taken by the trustees pursuant to the said Agreement and Declaration of Trusts, as amended from time to time.

10. If an Employer fails to make contributions to this Trust Fund on the due date (25th of each month) and in the manner determined by the Trustees, such failure shall be deemed a violation of this agreement, and the Union shall have the right to take whatever steps are necessary to secure compliance with this Agreement, and the Contractor shall be liable for all statutory remedies available under the ERISA statute, 29 U.S.C. 1132(g)(2), including interest, liquidated damages equal to 20% of the delinquent principal, audit costs, and all costs of collection including attorney's fees and costs. The Contractor's liability for payment under this Article shall not be subject to or covered by any grievance or arbitration procedure or any "no-strike" clause which may be provided or set forth elsewhere in this Agreement; however, the Trustees may in their discretion submit disputes regarding collections, liquidated damages and any and all amounts due to the Trust Funds to arbitration through the American Arbitration Association.

## SECTION 8. POLITICAL ACTION TOGETHER

The Employer(s) agree to deduct from employees' wages five cents ($0.05) per hour. This five cents ($0.05) per hour is to be contributed to the Political Action Together Fund of the International Union of Painters and Allied Trades. Employers party to this Agreement hereby agree to honor authorizations for check-off of political contributions from all employees who are Union members in the following form:

## AUTHORIZATION FORM FOR
## CHECK-OFF
## POLITICAL CONTRIBUTIONS

"I hereby authorize my employer to deduct from my pay the sum of five ($0.05) for each hour worked and to forward that amount to the PAT Political Committee, c/o International Union of Painters and Allied Trades, 1750 New York Avenue, N.W., Washington, D.C. 20006. This authorization is signed freely and voluntarily and not out of any fear of reprisal and on the

30

understanding that PAT Political Committee is engaged in a joint fund raising effort with the AFL-CIO, will use the money contributed to that effort to make political contributions and expenditures in connection with federal, state and local elections, and that this voluntary authorization may be revoked at any time by notifying my employer, PAT Political Committee and District Council No.____ and/or Local Union No.____ in writing of a desire to do so."

Name_____

Signature_____

Social Security _____

# ARTICLE XXII
## JOINT TRADE BOARD

1.  A Joint Trade Board consisting of a minimum of four (4) and no more than five (5) members designated by the District Council and a minimum of four (4) and no more than five (5) members designated by the Employers is hereby established. It is agreed to add equal portions along with any other Employer the Union may in the future recognize, all decisions shall be decided by a majority vote of all present, of which shall be final and binding to all parties to this Agreement.

2.  The members shall designate one to act as Chairman and one as Secretary, provided that every twelve (12) months the Chairman and Secretary shall be alternated between the Contractor and Union members of the Board. Both parties shall designate alternates to attend Board meetings in the place of regular members who may be absent or against whom charges may be filed. Not less than two (2) members (or their alternates) from each group must be present to constitute a quorum. Each member (or alternate) present shall be entitled to one vote, but in no event shall the members from one group cast more votes than those from the other. Members of the Board shall serve at the pleasure of the party making the designation. It shall be the duty of the parties to fill vacancies within five (5) days after they occur.

3. The Board shall meet on the second Thursday every other month or any other times as designated by the Chairman and Secretary. The Board shall hold special meetings at the request of any member, within seven (7) working days of written notification.

31

# PROJECT LABOR AGREEMENT

This Agreement is made and entered into by and between **Rogers Industries, PO Box 58, Randallstown MD 21133**, hereinafter referred to as the "Employer", and the **International Union of Painters and Allied Trades District Council No. 51 of Washington DC, Maryland, Virginia and Vicinities**, hereinafter referred to as the "Union".

It is agreed by and between the Employer and the Union that the Agreement for Painters and Allied Trades District Council No. 51 shall be binding upon the Employer at the construction projects for **Rogers Industries**, located at **Le'Fant Plaza Station, Washington DC, and various metro stations in Washington DC**, and only for the duration of time that construction work is being performed on this project. **It is expected that the work will begin June 1, 2005 and run through the duration of the projects.**

In accordance with the abovementioned Agreement, the Employer agrees to pay the appropriate monthly contributions to the IUPAT District Council No. 51 Benefit Funds, the International Union of Painters and Allied Trades Union and Industry Pension Fund, as well as the provisions therein pertaining to deductions from the wages of employees for Administrative Dues Check Off, Organizing Fund and the Political Action Together (PAT) Fund. Upon completion of said work, and payment of all wages and fringes benefits, this Project Labor Agreement shall become null and void.

_____
Timothy G. Edney
Business Manager/Secretary-Treasurer
Painters and Allied Trades District Council No. 51

Date  7/14/05

_____
Signature for Rogers Industries

Date  7/13/05

_____
Printed name for Rogers Industries

# PROJECT LABOR AGREEMENT

This Agreement is made and entered into by and between **Rogers Industries, PO Box 58, Randallstown MD 21133,** hereinafter referred to as the "Employer", and the **International Union of Painters and Allied Trades District Council No. 51 of Washington DC, Maryland, Virginia and Vicinities,** hereinafter referred to as the "Union".

It is agreed by and between the Employer and the Union that the Agreement for Painters and Allied Trades District Council No. 51 shall be binding upon the Employer at the construction project for **Rogers Industries, located at Key Bridge (KB-889-000-002), 4098 Fort Armistead Road, Curtis Bay MD 21226,** and only for the duration of time that construction work is being performed on this project.  **It is expected that the work will begin July 2004 and run through the duration of the project.**

In accordance with the abovementioned Agreement, the Employer agrees to pay the appropriate monthly contributions to the IUPAT District Council No. 51 Benefit Funds, the International Union of Painters and Allied Trades Union and Industry Pension Fund, as well as the provisions therein pertaining to deductions from the wages of employees for Administrative Dues Check Off and the Political Action Together (PAT) Fund.  Upon completion of said work, and payment of all wages and fringes benefits, this Project Labor Agreement shall become null and void.

_Timothy G. Edney_
Timothy G. Edney
Special Trustee
Painters and Allied Trades District Council No. 51

Date **8/19/04**

Signature for Rogers Industries

Date **8/12/04**

_Dorian E. Rogers_
Printed name for Rogers Industries

# RESTATED
# AGREEMENT AND DECLARATION OF TRUST

## Establishing the

## International Painters and Allied Trades

## Industry Pension Fund

This AGREEMENT AND DECLARATION OF TRUST is by and between the INTERNATIONAL UNION OF PAINTERS AND ALLIED TRADES (hereinafter referred to as the "Union"), and the FINISHING CONTRACTORS ASSOCIATION (hereinafter referred to as the "F.C.A."), and various employers of members of the union who are or may become parties to this Agreement as hereinafter defined (hereinafter referred to as "Employee" or "Employers").

## WITNESSETH:

WHEREAS, the International Union of Painters and Allied Trades, and/or various Local Unions or District Councils of the Union, and Employers have entered into or expect to enter into collective bargaining agreements which provide, among other things, for the establishment of a Pension Fund and prescribe the contributions or payments to be made by the Employers to such Fund; and

WHEREAS, to accomplish the aforesaid purpose, it is desired to establish a Pension Fund as a Trust Fund for receiving contributions and providing benefits for eligible employees; and

WHEREAS, the said Trust Fund is to be known as the "International Painters and Allied Trades Industry Pension Fund"; and

WHEREAS, it is desired to set forth the terms and conditions under which the said Fund is to

36479-3


EXHIBIT
2

be established and administered; and

WHEREAS, it has been mutually agreed that the Fund shall be administered by Trustees, and it is desired to define the powers and duties of the Trustees and the nature of benefits to be provided;

NOW, THEREFORE, in consideration of the premises, and the mutual covenants herein contained it is mutually understood and agreed as follows:

## ARTICLE I

Unless the context or subject matter otherwise requires, the following definitions shall govern in this Agreement:

*Section 1.*    AGREEMENT AND DECLARATION OF TRUST. The terms "Agreement and Declaration of Trust" or "Trust Agreement" shall mean this instrument, including any amendments hereto and modifications hereof. This Trust Agreement shall govern the operation of both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan.

*Section 2.*    PENSION FUND. The terms "Pension Fund" or "Fund" shall mean the International Painters and Allied Trades Industry Pension Fund, established by the Trust Agreement and shall mean generally the monies and other items of value which comprise the corpus and additions thereto, contributions payable to the Fund, and amounts received or held for or on behalf of the Trustees under both the International Painters and Allied Trades Industry Pension Plan and the International Painters and Allied Trades Industry Annuity Plan and title to all such monies, and other items of value including contributions owed but not yet received, shall be vested in the Trustees of Fund. The Fund also shall be known as the "IUPAT Industry Pension Fund."

- 2 -

*Section 3.*    PENSION PLAN.  The Term "Pension Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Pension Plan, and any modification, amendment, extension or renewal thereof. The Pension Plan also shall be known as the "IUPAT Industry Pension Plan."

*Section 4.*    ANNUITY PLAN.  The term "Annuity Plan" shall mean the Rules and Regulations of the International Painters and Allied Trades Industry Annuity Plan and any modification, amendment, extension or renewal thereof. The Annuity Plan shall also be known as the "IUPAT Industry Annuity Plan."

*Section 5.*    TRUSTEES.

(a)    The term "Employer Trustees" shall mean the Trustees appointed by the Employers who are parties to this Agreement.

(b)    The term "Union Trustees" shall mean the Trustees appointed by the Union.

(c)    The terms "Board of Trustees," "Trustees" and "Board" shall mean the Employer Trustees and the Union Trustees, collectively, and shall include their successors when acting as Trustees. Except where "United States" or "Canadian" is used in conjunction with them, the terms "Board of Trustees," "Trustees" and "Board" shall mean United States Trustees in matters involving their competence, or Canadian Trustees in matters involving their competence as set forth in Article IV, Section 1.

*Section 6.*    UNION.  The term "Union" shall mean the International Union of Painters and Allied Trades and its affiliated Local Unions and District Councils.

- 3 -

36479-3

*Section 7.*    CONTRIBUTING EMPLOYER. The term "Contributing Employer" shall mean any person, company or business organization which is or shall become a party to the Trust Agreement and which has agreed or shall agree in a Collective Bargaining Agreement with the Union to make contributions to the Pension Fund. In the case of an employer having more than one place of business, the term "Contributing Employers" shall apply only to the place of business specifically covered by the Collective Bargaining Agreement requiring contributions to the Pension Fund.

*Section 8.*    COLLECTIVE BARGAINING AGREEMENT. The term "Collective Bargaining Agreement" shall mean any written labor contract by and between a Contributing Employer and the Union which provides for contributions to this Pension Fund with any and all extensions or renewals thereof and successor agreements thereto.

*Section 9.*    EMPLOYEE. The term "Employee means: (a) Any person who performs work under a Collective Bargaining Agreement between a Contributing Employer and the Union and for whom the Employer is obligated to make contributions to the Trust; (b) any full-time salaried officer and employee of any Local Union or District Council which is permitted to participate in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan; (c) any member of such other class of employees employed by an Employer which is not within the bargaining unit represented by the Union provided that the employee's class is accepted for participation in the Fund in accordance with the Rules and Regulations of the Pension Plan or Annuity Plan. The term "Employee" shall not include any self-employed person, a sole proprietor of or a partner in an unincorporated business, or, unless the Rules and Regulations provide otherwise, a

- 4 -

corporate shareholder who spends less than 50% of his time performing work covered by a collective bargaining agreement.

Section 10.    EMPLOYER CONTRIBUTIONS.  The term "Employer Contributions" shall mean payments made or that are required to be made to the Fund, including amounts owed but not yet paid, by a Contributing Employer under the provisions of, or in accordance with, a Collective Bargaining Agreement and the Trust Agreement, or with regard to a Local Union or District Council or special classes of employees of a Contributing Employer, payments to the Fund pursuant to and in accordance with the Rules and Regulations of the Pension Plan and the Annuity Plan.  All such Employer Contributions are, and shall be considered as, plan assets from the date on which the hours (whether worked or paid) for which the Contributing Employer is obligated to pay contributions to the Fund accrue , whether or not such Employer Contributions are collected or received by the Fund. No Contributing Employer has any right, title, or interest to any sum payable by the Contributing Employer to the Fund, but not yet paid into the Fund.  Title to all Employer Contributions paid into and/or due and owing to the Fund shall be vested in the Trustees of the Fund.

## ARTICLE II

## GENERAL

Section 1.    ESTABLISHMENT OF FUND.  As hereby created, the International Painters and Allied Trades Industry Pension Fund shall comprise the entire assets derived from Employer Contributions made or payable to or for the account of this Fund under Collective Bargaining Agreements, together with any and all investments made and held by the Trustees, or monies received or payable to by the Trustees as contributions or as income from investments made and held

- 5 -

16479-3

by the Trustees or otherwise, and any other money or property, received and/or held by the Trustees for the uses, purposes and trust set forth in this Agreement and Declaration of Trust.

Section 2.    GENERAL PURPOSE. The Fund shall be a Trust Fund and shall be used for the purpose of providing Pension and Annuity Benefits, as decided by the Trustees, and shall further provide the means for financing the expenses of the Trustees and the operation and administration of the Fund, in accordance with this Agreement and Declaration of Trust.

## ARTICLE III

## UNITED STATES TRUSTEES

Section 1.    JOINT ADMINISTRATION. The operation and administration of the Pension Fund shall be the joint responsibility of the Trustees appointed by the Employers and the Trustees appointed by the Union.

Section 2.    ACCEPTANCE OF TRUSTEESHIP. The Trustees, by affixing their signatures at the end of this Agreement and Declaration of Trust, agree to accept the Trusteeship and act in their capacities strictly in accordance with the provisions thereof. Each additional or successor Trustee shall execute a written acceptance in a form satisfactory to the Trustees and thereby shall be deemed to have accepted the Trust created and established by this instrument and to have consented to act as Trustee or to have agreed to administer the Trust Fund as provided herein. Such written acceptance shall be filed with the Fund Administrator who shall notify the remaining Trustees of the receipt of such acceptance.

Section 3.    TERMS OF TRUSTEES. Each Trustee shall continue to serve as such until his death, incapacity, resignation, inability to serve pursuant to Section 9 of this Article, or removal,

- 6 -

36479-3

as hereinafter provided.

*Section 4.*    The Board of Trustees shall consist of up to 24 Trustees, 12 to be appointed by the Union and 12 to be appointed by the Employers.

*Section 5.*    UNION TRUSTEES.  The Union shall be and is empowered to appoint all Union Trustees.

*Section 6.*    EMPLOYER TRUSTEES.  The F.C.A. shall be and is empowered to appoint all Employer Trustees; provided, however, that the FCA must remain an organization that admits to its membership only 100% Union Signatory Employers in order to maintain its rights hereunder.

*Section 7.*    REMOVAL OF TRUSTEES.  The Union or the F.C.A. may remove any Trustee(s) appointed by it at any time, for any reason, with or without cause.

*Section 8.*    WHO MAY BE TRUSTEES.  At the time of his/her appointment to the Board of Trustees, each Employer Trustee must be signatory to a collective bargaining agreement requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction its principal place of business is located and such Employer Trustees must also employ an average of twenty-five (25) or more employees. Employer Trustees who satisfy these requirements at the time of their original appointment shall be considered as qualified  during their tenure, until removed in accordance with provisions in this Trust.  Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

*Section 9.*    FORM OF NOTIFICATION.  In the event any Union Trustees are appointed or removed, a statement in writing by the Union shall be sufficient evidence of the action taken by

- 7 -

36479-3

the Union. In the event any Employer Trustees are appointed or removed, a statement in writing by the Employer or Association empowered to so appoint or remove shall be sufficient evidence of the action taken by said Employer or Association. Any resignation by a Trustee shall be by certified mail, addressed to the office of the Fund.

Section 10.    VESTING OF POWERS AND DUTIES. Any additional or successor Trustee shall, immediately upon his appointment and his acceptance in writing filed with the Trustees, become vested with all the property, rights, powers and duties of a Trustee hereunder with like effect as if originally named as a Trustee and all the Trustees then in office and any Corporate Trustee or Corporate Agent appointed pursuant to Article V, Section 3, of this Trust Agreement and all other necessary persons shall be notified immediately.

## ARTICLE IV

## CANADIAN TRUSTEES

Section 1.    DECISIONS. The Canadian Board of Trustees shall make all decisions, and only such decisions, that affect Canadian participants, retirees and beneficiaries, Canadian Employers and monies contributed by them, and funds maintained in Canada.

Section 2.    APPOINTMENT. The Canadian Board of Trustees shall consist of up to 6 Trustees. The Union may appoint 3 Trustees, 2 of whom shall be Canadian citizens. Canadian Employers may appoint 2 Trustees who shall be Canadian citizens. Employer Trustees of this Fund may appoint 1 Trustee.

Section 3.    REMOVAL. The Union or Employers empowered by this Article to appoint Trustees may remove any Trustee(s) appointed by it or them.

- 8 -

36479-3

*Section 4.*    WHO MAY BE TRUSTEES. Each Employer Trustee must be signatory to a collective bargaining agreement, requiring contributions to this Fund, with a Local Union or District Council in whose geographic jurisdiction his principal place of business is located. Each Employer Trustee must also employ an average of twenty-five or more employees. Union Trustees shall be General Officers of the International Union or members of the IUPAT who, in the opinion of the Union, are most likely to conscientiously serve the bests interests of the Fund.

*Section 5.*    PROCEDURES. The procedures, rights and obligations set forth in Article III, Sections 2, 3, 9 and 10, shall apply to this Board of Trustees.

36479-3

# ARTICLE V

## POWERS, DUTIES AND OBLIGATIONS OF TRUSTEES

*Section 1.*     PROPERTY AND ASSISTANCE.  The Trustees are authorized and empowered to lease or purchase such premises, materials, supplies and equipment, and to hire and employ and retain such legal counsel, investment manager or counsel, administrative, accounting, actuarial, clerical and other assistants or employees as in their discretion they may find necessary or appropriate in the performance of their duties and to pay the costs thereof out of the Fund.

*Section 2.*     CONSTRUCTION OF AGREEMENT.  The Trustees shall have the power to construe the provisions of this Agreement and Declaration of Trust and the terms used herein and any construction adopted by the Trustees in good faith shall be binding upon the Union, the Contributing Employers, the employees and their families, dependents, beneficiaries and/or legal representatives.

*Section 3.*     GENERAL POWERS.  The Trustees are hereby empowered, in addition to other such powers as set forth herein or conferred by law:

(a) to establish and administer a Pension Fund, and Pension and Annuity Plans, on behalf of the Employees referred to in this instrument;

(b) to enter into any and all contracts and agreements for carrying out the terms of this Agreement and Declaration of Trust and for the administration of the Pension Fund and to do all acts as they, in their discretion, may deem necessary and advisable;

(c) to compromise, settle, arbitrate and release claims or demands in favor of or against the Pension Fund or the Trustees on such terms and conditions as the Trustees may deem advisable;

- 10 -

36479-3

(d) to establish and accumulate as part of the Pension Fund a reserve or reserves, adequate, in the opinion of the Trustees, to carry out the purpose of such Trust;

(e) to pay out of the Pension Fund all real and personal property taxes, income taxes and other taxes of any and all kinds levied or assessed under existing or future laws upon or in respect to the Fund or any money, property, or securities forming a part thereof;

(f) to make appropriate allocations of common administrative expenses and disbursements shared or to be shared with any other Plan or Fund;

(g) to receive contributions or payments from any source whatsoever to the extent permitted by law;

(h) to invest and reinvest the Pension Funds in any type of investments and to take any and all action with respect to holding, buying, selling or maintaining such investments as they, in their sole discretion, may deem appropriate;

(i) to procure a group annuity contract or contracts in accordance with the Insurance Code of the District of Columbia for the purpose of providing some or all of the benefits to be provided under this Pension Fund and/or appoint a bank or banks or trust company or trust companies to be designated as (1) "Corporate Trustee," and to enter into and execute a trust agreement or agreements with such bank or banks or trust company or trust companies, to provide for the investment and reinvestment of assets of the Pension Fund with such other provisions incorporated therein as may be deemed desirable in the Trustee's sole discretion for the proper management of the Pension Fund and without limit with respect to the powers which the Trustees may grant to such Corporate Trustee, in such agreement to the extent permitted by law; or as (2) "Corporate Agent";

- 11 -

(j) to do all acts, whether or not expressly authorized herein, that the Trustees may deem necessary or proper for the protection of the property held hereunder;

(k) to do all acts, whether or not expressly authorized herein, which the Trustees may deem necessary to accomplish to the general objective of enabling the employees to obtain pension and annuity benefits in the most efficient and economical manner.

*Section 4.*    COMPENSATION. The Union and Employer Trustees shall not receive compensation for the performance of their duties. However, they may be reimbursed for reasonable out-of-pocket travel and incidental expenses in connection with their duties as Trustees.

*Section 5.*    AUTHORITY TO ENTER INTO AGREEMENTS WITH OTHER TRUSTEES. The Trustees are hereby given authority to enter into agreements with Trustees of other Pension Funds to which the Union is a party to permit such other Pension Funds to join or merge with the Pension Fund.

*Section 6.*    PERSONAL LIABILITY. The liability, if any, of the Board of Trustees or any individual Trustee or Trustees shall be governed by the following provisions to the extent permissible by applicable Federal law: Neither the Trustees nor any individual or Successor Trustee shall be personally answerable or personally liable for any liabilities or debts of the Fund contracted by them as such Trustees, or for the non-fulfillment of contracts, but the same shall be paid out of the Fund and the Fund is hereby charged with a first lien in favor of such Trustee for his or their security and indemnification for any amounts paid out by any such Trustee for any such liability and for his and their security and indemnification against any liability of any kind which the Trustees or any of them may incur hereunder, including cost of defense of litigation; provided, however, that nothing

- 12 -

herein shall exempt any Trustee from liability arising out of his own willful misconduct, bad faith or gross negligence, or entitle such Trustee to indemnification for any amounts paid or incurred as a result thereof.

The Trustees and each individual Trustee shall not be liable for any error of judgment or for any loss arising out of any act or omission in the execution of their duties, except in case of willful misconduct, bad faith or gross negligence; nor shall any Trustee, in the absence of his own willful misconduct, bad faith or gross negligence, be personally liable for the acts or omissions (whether performed at the request of the Trustees or not) of any other Trustee, or of any agent or attorney elected or appointed by or acting for the Trustees.

The Trustees shall be fully protected in acting upon any instrument, certificate or paper believed by them to be genuine and to be signed or presented by the proper person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Neither the Employers, nor the Union, shall in any way be liable in any respect for any of the acts, omissions or obligations of the Trustees, individually or collectively.

The Trustees may from time to time consult with the Trust's legal counsel and shall be fully protected in acting upon such advice of counsel to the Trust as respects legal questions.

*Section 7.*    BOOKS OF ACCOUNT. The Trustees shall keep true and accurate books of account and records of all their transactions, which shall be audited annually or more often by a certified public accountant selected by the Trustees. A copy of such audit shall be available at all

- 13 -

36479-1

times upon reasonable notice for inspection by signatories to this Agreement at the principal office of the Fund.

Section 8.    EXECUTION OF DOCUMENTS. The Trustees may authorize an Employer Trustee and a Union Trustee or any joint group equally composed of Employer and Union Trustees to execute jointly any notice or other instrument in writing and all persons, partnerships, corporations or associations may rely thereupon that such notice or instrument has been duly authorized and is binding on the Pension Fund and the Trustees.

Section 9.    DEPOSIT AND WITHDRAWAL OF FUNDS. All monies received by the Trustees hereunder shall be deposited by them in such bank or banks as the Trustees may designate for that purpose and all withdrawals of monies from such account or accounts shall be made only by checks signed by the Trustees authorized in writing by the Trustees to sign such checks. No check shall be valid unless signed by two persons of whom one shall be a Union Trustee and one an Employer Trustee, except when signed by a designated employee as provided in this Section.

The Employer Trustees shall designate in writing the name or names of any Employer Trustee who may sign checks in the above manner, and the Union Trustees shall likewise designate in writing the name or names of the Union Trustee who may sign checks in the above manner.

The Trustees may, in their discretion, designate and authorize an employee of the Fund to sign checks upon such separate and specific bank account or bank accounts as the Trustees may designate and establish for that purpose.

Section 10.    SURETY BONDS. The Trustees and any employees of the Trustees who are empowered and authorized to sign checks as aforesaid shall each be bonded by a duly authorized

- 14 -

surety company in such amount as may be determined from time to time by the Trustees. Each such employee employed by the Trustees who may be engaged in handling monies of the Pension Fund shall also be bonded by a duly authorized surety company in the same manner. The cost of the premium on such bonds shall be paid out of the Pension Fund.

## ARTICLE VI

## CONTRIBUTIONS TO THE PENSION FUND

*Section 1.*    RATE OF CONTRIBUTIONS. In order to effectuate the purpose hereof, each Employer shall contribute to the Pension Fund the amount required by the Collective Bargaining Agreement between the Union and the Employer. The rate of contribution shall at all times be governed by the aforesaid Collective Bargaining Agreement then in force and effect, together with any amendments, supplements or modification thereto. On matters other than contribution rates, contributions to the Pension Plan shall be governed by the Rules and Regulations of the Pension Plan; contributions to the Annuity Plan shall be governed by the Rules and Regulations of the Annuity Plan.

*Section 2.*    EFFECTIVE DATE OF CONTRIBUTIONS. All contributions shall be made effective as required by the Collective Bargaining Agreement and shall continue to be paid as long as the Employer is so obligated pursuant to the Collective Bargaining Agreement with the Union or until he ceases to be an Employer within the meaning of this Agreement and Declaration of Trust, as hereinafter provided.

*Section 3.*    MODE OF PAYMENT. All contributions shall be payable to the "IUPAT Industry Pension Fund" and shall be paid in the manner and form determined by the Trustees.

- 15 -

36479-3

*Section 4.*    DEFAULT IN PAYMENT.    Non-payment by an Employer of any contributions when due shall not relieve any other Employer of his obligation to make payment. In addition to any other remedies to which the parties may be entitled, an Employer in default for twenty days may be required at the discretion of the Trustees to pay such reasonable rate of interest as the Trustees may fix on the money due to the Trustees from the date when the payment was due to the date when payment is made, together with all expenses of collection (including attorneys' fees) incurred by the Trustees and such liquidated damages or penalties as may be assessed by the Trustees.

*Section 5.*    REPORT ON CONTRIBUTIONS. The Employers shall make all reports on contributions in such manner and form as required by the Trustees.

*Section 6.*    AUDITS. The Trustees may at any time have an audit made by certified public accountants of the payroll, wage and cash disbursement records, general ledger, and other financial records, including but not limited to tax returns, of any Employer in connection with the said contributions and/or reports. When an Employer receives notice that the Employer is scheduled for an audit, the Employer may write to the Fund 1) explaining why the time or date for the audit is impossible for the Employer to comply with and 2) offering alternative times or dates for an audit within a reasonable time. If the Fund does not receive such a written response from the Employer within 48 hours before the scheduled audit, the certified public accountants responsible for the audit may proceed as scheduled. If the Employer fails to cooperate with a scheduled audit, the Trustees may require that the Employer pay to the Fund all costs incurred as a result of the Employer's failure. Any Employer found delinquent or in violation of the Rules and Regulations of the Pension Plan

- 16 -

36479-3

and/or the Annuity Plan as a result of an audit may be required by the Trustees to pay to the Fund the cost of the audit.

## ARTICLE VII

## PLAN OF BENEFITS

*Section 1.*     BENEFITS. The Trustees shall have full authority to determine all questions of the nature, amount and duration of benefits to be provided, based on what is estimated the Fund can provide without undue depletion or excess accumulation; provided, however, that no benefits other than pension, annuity, death, disability and severance benefits may be provided for or paid under this Agreement and Declaration of Trust.

*Section 2.*     RECIPIENTS OF BENEFITS. Benefits may be provided in accordance with Section 1 of this Article for any employee of a Contributing Employer covered by a Collective Bargaining Agreement between the Employer and the Union or other classes of employee defined in Article I, Section 9(a), (b) and (c).

*Section 3.*     ELIGIBILITY REQUIREMENTS FOR BENEFITS. The Trustees shall have full authority to determine eligibility requirements for benefits and to adopt rules and regulations setting forth same which shall be binding on the employees and their beneficiaries.

*Section 4.*     METHOD OF PROVIDING BENEFITS. The benefits shall be provided and maintained by such means as the Trustees shall in their sole discretion determine.

*Section 5.*     WRITTEN PLAN OF BENEFITS. The detailed basis on which payment of benefits is to be made pursuant to this Agreement shall be specified in writing by appropriate action of the Trustees subject, however, to such changes or modifications by the Trustees from time to time

- 17 -

36479-3

as they in their discretion may determine. All such changes or modifications shall similarly be specified in writing by appropriate resolution of the Trustees.

Section 6.    APPROVAL OF PLAN. (a) United States: The Pension Plan and Annuity Plan adopted by the Trustees shall be such as will qualify for approval by the Internal Revenue Service, U.S. Treasury Department, and will continue as qualified Plans, so as to ensure that the Employer contributions to the Pension Fund are proper deductions for income tax purposes. The Trustees are authorized to make whatever applications are necessary with the Internal Revenue Service to receive and maintain approval of the Pension Plan and the Annuity Plan. (b) Canada: The Pension Plan and Annuity Plan shall be such as will qualify for approval by Revenue Canada and for registration, as appropriate, under Provincial legislation.

Section 7.    LIMIT OF EMPLOYER'S LIABILITY. Except for withdrawal liability and delinquency liability provided by law, and except as provided in Article VI, the financial liability of any Employer shall in no event exceed the obligation to make contributions as set forth in its applicable Collective Bargaining Agreement with the Union.

## ARTICLE VIII

## MEETING AND DECISION OF TRUSTEES

Section 1.    OFFICERS OF TRUSTEES. The Trustees shall elect two Co-Chairmen, one from among the Union Trustees and the other from among the Employer Trustees. The terms of such officers shall commence on the date of their election and continue until his or their successors have been elected.

Section 2.    MEETING OF TRUSTEES. Meetings of the Trustees shall be held at such

- 18 -

36479-3

place or places as may be agreed upon by the Co-Chairmen and may be called by the said officers upon twenty (20) days' notice to the other Trustees and may be held at any time without such notice if all the Trustees consent thereto in writing. The Co-Chairmen may also convene a meeting of the Trustees by telephone conference called upon five (5) days notice to the other Trustees.

Section 3.    ACTION BY TRUSTEES WITHOUT MEETING.  Action by the Trustees may also be taken by them in writing without a meeting; provided, however, that in such cases there shall be unanimous written concurrence by all the Trustees.

Section 4.    QUORUM (UNITED STATES).  In all meetings of the Trustees, two Trustees shall constitute a quorum for the transaction of business providing that there is at least one Employer and one Union Trustee present at the meeting.  The vote of any absent Trustee shall be cast by the Trustees present, designated by the same party with the same force as if such absent Trustee was present.  If at any time there is an unequal number of Employer and Union Trustees appointed, the Employer Trustees and the Union Trustees shall have equal voting strength with the difference in the number appointed treated as absent Trustees.

Section 5.    MAJORITY VOTE OF TRUSTEES (UNITED STATES).  All action by the Trustees shall be by majority decision of the Employer and Union Trustees.  Such majority vote shall govern not only this Article but any portion of this Agreement and Declaration of Trust which refers to action by the Trustees.  In the event any matter presented for decision cannot be decided because of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be submitted to arbitration as hereinafter provided.

Section 6.    QUORUM AND VOTING (CANADA).  In all meetings of the Canadian

- 19 -

16479-3

Trustees, two Trustees shall constitute a quorum for the transaction of business. All action by the Trustees shall be by unit vote, with the Union Trustees having 1 vote and the Employer Trustees having 1 vote. How each such vote is cast shall be decided by majority vote within each respective unit. In the event any matter presented for decision cannot be decided because of a tie vote, or because of the lack of quorum at two consecutive meetings, the matter shall be submitted to arbitration as hereinafter provided.

Section 7.    MINUTES OF MEETINGS. The Trustees shall keep minutes of all meetings but such minutes need not be verbatim. Copies of the minutes shall be sent to all Trustees.

# ARTICLE IX

## IMPARTIAL ARBITRATOR

Section 1.    APPLICATION OF THIS ARTICLE. If the Trustees cannot agree on an arbitrator, either the Employer Trustees or the Union Trustees or both may apply to the District Court of the United States for the District in the area in which the Fund maintains its principal office (the Canadian Trustees may apply to the competent court in the jurisdiction of the Courts of Ontario) for the designation of an arbitrator who will decide any dispute among the Trustees or any other matter submitted to arbitration in accordance with the provisions of Article VIII, Sections 5 or 6. The decision of the arbitrator shall be final and binding.

Section 2.    EXPENSES OF ARBITRATION. The cost and expense incidental to any arbitration proceedings, including the fee, if any, of the impartial arbitrator, shall be proper charges against the Fund and the Trustees are authorized to pay such charges.

- 20 -

36479-3

# ARTICLE X

## EXECUTION OF AGREEMENT AND DECLARATION OF TRUST

*Section 1.*    COUNTERPARTS. This Agreement and Declaration of Trust may be executed in any number of counterparts. The signature of a party on any counterpart shall be sufficient evidence of his execution thereof.

*Section 2.*    WRITTEN INSTRUMENT. An Employer may adopt and become a party to this Agreement and Declaration of Trust by executing a counterpart hereof or by executing any other written instrument wherein he agrees to participate in the Fund pursuant to the terms of this Agreement and Declaration of Trust, and upon written notification from the Trustees that he has been accepted as a Contributing Employer.

*Section 3.*    EFFECTIVE DATE. The effective date of this Restated Agreement and Declaration of Trust is April 1, 2002. This Restated Agreement and Declaration of Trust continues in effect, except as modified herein and by amendments duly adopted from time to time, the provisions of an Agreement and Declaration of Trust effective April 1, 1967.

# ARTICLE XI

## AMENDMENT TO AGREEMENT AND DECLARATION OF TRUST

*Section 1.*    AMENDMENT BY TRUSTEES. This Agreement and Declaration of Trust may be amended in any respect from time to time by the Trustees, provided that each amendment shall be duly executed in writing by the Trustees. As to any amendment, the Trustees, in their discretion, shall have power to fix the effective date thereof. Notice of the proposed amendment shall be given at the time the notice of the meeting is given, unless waived by the Trustees.

- 21 -

J6479-3

*Section 2.*    LIMITATION OF RIGHT TO AMENDMENT.  No amendment may be adopted which will be in conflict with the Collective Bargaining Agreements with the Union to the extent that such agreements affect contributions to the Fund created hereunder, be contrary to the laws governing trust funds of this nature, or be contrary to any agreements entered into by the Trustees.  Under no circumstances shall any amendment be adopted which will in any way alter Article XIII, Section 1.

Section 3.    NOTIFICATION OF AMENDMENT.  Whenever an amendment is adopted in accordance with this Article, a copy thereof shall be distributed to all Trustees, and the Trustees shall so notify all necessary parties and shall execute any instrument or instruments necessary in connection therewith.

## ARTICLE XII

## TERMINATION OF TRUST

*Section 1.*    BY THE TRUSTEES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing executed by all the Trustees when there is no longer in force and effect a Collective Bargaining Agreement between an Employer and the Union requiring contributions to the Fund.

*Section 2.*    BY THE PARTIES.  This Agreement and Declaration of Trust may be terminated by an instrument in writing duly executed by the Employers and the Union.

*Section 3.*    PROCEDURE ON TERMINATION.  In the event of the termination of this Agreement and Declaration of Trust, the Trustees shall apply the Fund to pay or to provide for the payment of any and all obligations of the Fund and shall distribute and apply any remaining surplus

- 22 -

in such manner as will, in their opinion, best effectuate the purpose of the Fund; provided, however, that no part of the corpus or income of said Fund shall be used for or diverted to purposes other than for the exclusive benefits of the employees, their families, beneficiaries or dependents, or the administrative expenses of the Fund or for other payments in accordance with the provisions of the Fund.

Section 4.    NOTIFICATION OF TERMINATION.  Upon termination of the Fund in accordance with this Article, the Trustees shall forthwith notify each Local Union and/or District Council of the Union and each Employer, who are parties hereto, and also all other necessary parties; and the Trustees shall continue as Trustees for the purpose of winding up the affairs of the Trust.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

Section 1.    NON-REVERSION.  Under no circumstances shall any portion of the corpus or income of the Fund, directly or indirectly, revert or accrue to the benefit of any Contributing Employer or Local Union, and/or District Council or the Union.

Section 2.    TERMINATION OF INDIVIDUAL EMPLOYERS.  An Employer shall cease to be an Employer within the meaning of this Agreement and Declaration of Trust when he is no longer obligated, pursuant to a Collective Bargaining Agreement with the Union, to make contributions to this Pension Fund, or, as determined by the Trustees, when he is delinquent in his contributions or reports to the Pension Fund.

Section 3.    VESTED RIGHTS.  No Employee or any person claiming by or through such Employee, including his family, dependents, beneficiary and/or legal representative, shall have any

- 23 -

36479-3

right, title or interest in or to the Pension Fund or any property of the Pension Fund or any part thereof except as may be specifically determined by the Trustees.

Section 4.    ENCUMBRANCE OF BENEFITS.  No monies property or equity of any nature whatsoever, in the Pension Fund, or contracts or benefits or monies payable therefrom, shall be subject in any manner by an Employee or person claiming through such Employee to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, garnishment, mortgage, lien or charge, and any attempt to cause the same subject thereto shall be null and void, except for a qualified domestic relations order issued by a court of competent jurisdiction pursuant to law.

Section 5.    SITUS. The City of Washington, D.C., shall be deemed the situs of the Trust Fund created hereunder.  All questions pertaining to validity, construction and administration shall be determined in accordance with federal law or, when applicable, the laws of the District of Columbia.

Section 6.    CONSTRUCTION OF TERMS.  Whenever any words are used in this Agreement and Declaration of Trust in the masculine gender, they shall be construed as though they were also in the feminine gender or neuter in all situations where they would so apply, and wherever any words are used in this Agreement and Declaration of Trust in the singular form, they shall be construed as though they were also used in the plural form in all situations where they would so apply, and wherever any words are used in the Agreement and Declaration of Trust in the plural form, they shall be construed as though they were also used in the singular form in all situations where they would so apply.

Section 7.    CERTIFICATION OF TRUSTEES' ACTIONS. The Co-Chairmen of the

- 24 -

36479-3

Trustees may execute any certificate or document jointly on behalf of the Trustees and such execution shall be deemed execution by all the Trustees. All persons having dealings with the Pension Fund or with the Trustees shall be fully protected in reliance placed on such duly executed documents.

Section 8.    NOTIFICATION TO TRUSTEES. The address of each of the Trustees shall be that stated on the signature page of this Agreement and Declaration of Trust. Any change of address shall be effected by written notice to the Trustees.

Section 9.    SEVERABILITY. Should any provision in this Agreement and Declaration of Trust or in the Plan or Rules and Regulations adopted thereunder or in any Collective Bargaining Agreement be deemed or held to be unlawful or invalid for any reason, such fact shall not adversely affect the provisions herein and therein contained unless such illegality shall make impossible or impractical the functioning of the Trust and the Plan, and in such case the appropriate parties shall immediately adopt a new provision to take the place of the illegal or invalid provision.

Section 10.    TITLES. The title headings to the various Sections and Articles are for the purpose of convenience only and shall not have any legal significance apart from the text.

IN WITNESS THEREOF, the undersigned to hereby cause this instrument to be executed.

FOR THE INTERNATIONAL
UNION OF PAINTERS AND
ALLIED TRADES

BY: _____
        James A. Williams
        General President

FOR THE FINISHING CONTRACTORS
ASSOCIATION

BY: _____
        John Frye
        Chairman

- 25 -

16479-3

# INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION FUND

United Unions Building, Suite 501
1750 New York Avenue, NW
Washington, DC 20006

Telephone: (202) 783-4884

## UNITED STATES TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

**Employer Trustees**

Kenneth E. Rigmaiden
George Galis
William D. Candelori, Jr.
Robert Kucheran
Raymond J. Price, III
Raymond Sesma

Aristotle G. Aivaliotis
Joseph Brescia
Robert L. Cusumano
Richard A. Grund
Michael LeGood
Leo J. Manta
Steve Sharpe

## CANADIAN TRUSTEES

James A. Williams
Co-Chairman

Alvin Levine
Co-Chairman

**Union Trustees**

**Employer Trustees**

Robert Kucheran
William Nicholls

Adolf Gust
Richard Pazdzierski

# International Painters And Allied Trades Industry Pension Plan



## Rules and Regulations
as amended and restated as of January 1, 2003



EXHIBIT

3

<u>IUPAT INDUSTRY PENSION PLAN</u>                                      <u>PAGE i</u>

## TABLE OF CONTENTS

ARTICLE 1.    ESTABLISHMENT & CONSTRUCTION ................................................. 1

Section 1.01    Establishment of Plan and Name ........................................... 1
Section 1.02    Purpose .......................................................................... 1
Section 1.03    Trustees .......................................................................... 1
Section 1.04    Plan Effective Date .......................................................... 1
Section 1.05    Amendment of Plan .......................................................... 2
Section 1.06    Prohibited Amendments .................................................... 2
Section 1.07    Merger or Transfer of Plan Assets ...................................... 2
Section 1.08    Termination of Plan .......................................................... 2
Section 1.09    Termination Actions .......................................................... 3
Section 1.10    Notices ............................................................................ 3
Section 1.11    Unauthorized Representations ............................................ 3
Section 1.12    Construction .................................................................... 3
Section 1.13    Choice of Law .................................................................. 4
Section 1.14    Severability ...................................................................... 4

ARTICLE 2.    ADMINISTRATION .................................................................. 4

Section 2.01    Powers Of Trustees .......................................................... 4
Section 2.02    Duties and Powers of Plan Administrator ............................ 5
Section 2.03    Discretion ........................................................................ 5
Section 2.04    Consultants ...................................................................... 5
Section 2.05    Delegation and Allocation of Responsibility ........................ 5
Section 2.06    Reliance ........................................................................... 5
Section 2.07    Limitation of Liability ........................................................ 5
Section 2.08    Indemnity ........................................................................ 6

ARTICLE 3.    PARTICIPATION ...................................................................... 6

Section 3.01    Eligible Employees .......................................................... 6
Section 3.02    Entry Date ........................................................................ 7
Section 3.03    Termination of Participation .............................................. 7
Section 3.04    Reinstatement of Participation .......................................... 7
Section 3.05    Acceptance of a New Contributing Employer ...................... 8
Section 3.06    Acceptance of A New Affiliated Employer ............................ 8
Section 3.07    Additional Conditions ...................................................... 9
Section 3.08    Delinquent Employers ...................................................... 9
Section 3.09    Mergers .......................................................................... 10

ARTICLE 4.    VESTING .............................................................................. 10

Section 4.01    Vested Participant ............................................................ 10
Section 4.02    Service Vesting ................................................................ 10
Section 4.03    Age Vesting ...................................................................... 11
Section 4.04    Termination Vesting .......................................................... 11
Section 4.05    Vesting Changes .............................................................. 11
Section 4.06    Years of Vesting Service .................................................... 11
Section 4.07    One-Year Break-in-Service .............................................. 12
Section 4.08    Effect of One-Year Break .................................................. 12
Section 4.09    Cure of One-Year Break .................................................... 12
Section 4.10    Family and Medical Leave ................................................ 13
Section 4.11    Qualified Military Service .................................................. 13
Section 4.12    Permanent Break in Service .............................................. 14

# IUPAT INDUSTRY PENSION PLAN

**PAGE ii**

Section 4.13    Effect of Permanent Break ............................................................. 14

**ARTICLE 5.    ACCRUED PENSION BENEFIT CALCULATION** .......................... 15

Section 5.01    Accrued Benefit .......................................................................... 15
Section 5.02    Pension Benefit for Service before the Contribution Period - Qualification ........ 16
Section 5.03    Pension Benefit Credit for Service before the Contribution Period - Amount ....... 17
Section 5.05    Benefit Credit for Service during the Contribution Period ...................... 19
Section 5.06    Maximum Contribution  Rates ............................................................ 19
Section 5.07    Extra Contributions ...................................................................... 20
Section 5.08    Contribution Rate ........................................................................ 20
Section 5.09    Contribution Rate Changes ................................................................ 20
Section 5.10    Benefit Break-In-Continuity ............................................................. 21
Section 5.11    New Groups ................................................................................ 22
Section 5.12    Reciprocal Pension Agreements ........................................................... 22
Section 5.13    Merger Agreements ........................................................................ 23
Section 5.14    Post-Retirement Benefit Increases ....................................................... 23

**ARTICLE 6.    PENSION BENEFIT PAYMENT** ...................................................... 24

Section 6.01    Normal Retirement Pension – Eligibility .............................................. 24
Section 6.02    Normal Retirement Age .................................................................. 24
Section 6.03    Normal Retirement Pension – Amount .................................................. 24
Section 6.04    Late Retirement Pension – Eligibility ................................................. 25
Section 6.05    Late Retirement Pension – Amount ...................................................... 25
Section 6.06    Mandatory Payment of Benefits ......................................................... 25
Section 6.07    Mandatory Payment - Amount ........................................................... 26
Section 6.08    Special Early Retirement Pension - Eligibility ........................................ 27
Section 6.09    Special Early Retirement Pension - Amount ............................................ 28
Section 6.10    Early Retirement Pension —Eligibility ................................................. 28
Section 6.11    Early Retirement Pension - Amount ..................................................... 28
Section 6.12    Disability Pension — Eligibility ....................................................... 29
Section 6.13    Disability Pension - Amount ............................................................ 30
Section 6.14    Effect of Recovery by a Disabled Pensioner ........................................... 30
Section 6.15    Early Vested Pension — Eligibility ..................................................... 31
Section 6.16    Early Vested Pension - Amount ......................................................... 31
Section 6.17    Partial Pension - Eligibility ........................................................... 32
Section 6.18    Partial Pension - Amount ............................................................... 32
Section 6.19    Partial Pension – Payment Forms ........................................................ 32
Section 6.20    Non-Duplication of Pensions ............................................................ 32
Section 6.21    Taxes ..................................................................................... 33

**ARTICLE 7.    STANDARD PENSION PAYMENT FORMS** ...................................... 33

Section 7.01    General Payment Restrictions ........................................................... 33
Section 7.02    Commencement of Benefits Generally .................................................... 33
Section 7.03    Married Participants - General Rules ................................................... 34
Section 7.04    Single Participants - General Rules .................................................... 34
Section 7.05    Small Benefits ........................................................................... 34
Section 7.06    Husband-and-Wife Pension at Retirement — Standard Form of Benefit Payment
                 for Married Participants ................................................................ 35
Section 7.07    Waiver of Husband-and-Wife Pension .................................................... 35
Section 7.08    Pre-retirement Surviving Spouse Pension ............................................... 37
Section 7.09    Waiver of Pre-retirement Surviving Spouse Pension ..................................... 37
Section 7.10    Pre-retirement Surviving Spouse Pension - Spouse Alternatives ........................ 38
Section 7.11    Qualified Domestic Relations Orders .................................................... 39

# IUPAT INDUSTRY PENSION PLAN                                    PAGE  iii

Section 7.12   Qualified Domestic Relations Order Procedures ..........................................39
Section 7.13   Guaranteed Five-Year Pension (Unreduced Pension) — Standard Form of Benefit
Payment for Unmarried Participants ..........................................40
Section 7.14   Pre-Retirement Death Benefit - Eligibility ..........................................40
Section 7.15   Post-Retirement Death Benefit – Amount ..........................................41
Section 7.16   Beneficiary..........................................41
Section 7.17   Retirement and Suspension of Benefits Before Normal Retirement Age ..........................................42
Section 7.18   Pensioner Reporting of Work Before Normal Retirement Age ..........................................42
Section 7.19   Resumed Benefits Before Normal Retirement Age – Eligibility ..........................................43
Section 7.20   Resumed Benefits Before Normal Retirement Age - Amount..........................................43
Section 7.21   Suspension of Benefits after Normal Retirement Age ..........................................44
Section 7.22   Plan Disclosure of Suspension Rules ..........................................45
Section 7.23   Pensioner Reporting of Work after Normal Retirement Age..........................................45
Section 7.24   Advance Determinations of Suspendible Work..........................................46
Section 7.25   Plan Notice of Suspension after Normal Retirement Age..........................................46
Section 7.26   Resumption of Benefit Payments after Normal Retirement Age - Eligibility....46
Section 7.27   Resumption of Benefit Payments after Normal Retirement Age – Amount ..........................................47
Section 7.28   Waiver of Suspension ..........................................48
Section 7.29   Incompetence or Incapacity of a Pensioner or Beneficiary ..........................................48
Section 7.30   Non-Assignment of Benefits ..........................................48
Section 7.31   Payments to Minors ..........................................49

ARTICLE 8.    OPTIONAL FORMS OF PENSION PAYMENT ..........................................49

Section 8.01   General..........................................49
Section 8.02   Joint and Survivor Options ..........................................50
Section 8.03   Social Security (Level Income) Option ..........................................52
Section 8.04   Combined Level Income and Joint and Survivor Option ..........................................52
Section 8.05   Ten Year Certain Option ..........................................53
Section 8.06   Lump Sum Payment Option..........................................53
Section 8.07   Benefit Payment Restrictions ..........................................54
Section 8.08   Trustee-to-Trustee Transfers - Rollovers ..........................................58

ARTICLE 9.    CLAIMS PROCEDURE & BENEFIT PAYMENTS ..........................................60

Section 9.01   Application ..........................................60
Section 9.02   Partial Pension - Application Procedure ..........................................60
Section 9.03   Information and Proof..........................................60
Section 9.04   Trustee Discretion and Authority..........................................60
Section 9.05   Initial Claim Determination ..........................................61
Section 9.06   Request for Review..........................................61
Section 9.07   Decision on Review ..........................................61
Section 9.08   Administrative Delay ..........................................62
Section 9.09   No Rights to Assets..........................................62

ARTICLE 10.   FUNDING..........................................62

Section 10.01  Funding Policy..........................................62
Section 10.02  Trust for Participants ..........................................62
Section 10.03  Investments ..........................................62
Section 10.04  Source of Benefit Payments..........................................63
Section 10.05  Expenses..........................................63
Section 10.06  Non-Reversion ..........................................63
Section 10.07  Employer Contributions ..........................................63
Section 10.08  Irrevocability of Contributions ..........................................63
Section 10.09  Qualified Military Service Contributions ..........................................63

# IUPAT INDUSTRY PENSION PLAN

PAGE iv

Section 10.10 Return of Mistaken Contributions ........................................................... 64
Section 10.11 Delinquent Employers ............................................................................... 64
Section 10.12 Collection of Delinquent Contributions ................................................... 65

ARTICLE 11.    CONTRIBUTING EMPLOYER WITHDRAWAL ....................................... 66

Section 11.01 Employer Withdrawal - In General .......................................................... 66
Section 11.02 Control Group Employer - Definition ...................................................... 66
Section 11.03 Construction Industry Employers - Definition ......................................... 66
Section 11.04 Complete Withdrawal - Defined ............................................................... 66
Section 11.05 Partial Withdrawal - Defined ................................................................... 67
Section 11.06 Unfunded Vested Liability ........................................................................ 67
Section 11.07 Title IV Vested Benefits ........................................................................... 67
Section 11.08 Initial Unfunded Vested Liability ............................................................ 68
Section 11.09 Annual Change in Unfunded Vested Liability .......................................... 68
Section 11.10 Reallocated Liability ................................................................................. 68
Section 11.11 Mergers ..................................................................................................... 69
Section 11.12 Amount of Control Group Employer Liability for Complete Withdrawal ... 69
Section 11.13 Employer Proportionate Share of Initial Unfunded Vested Liability ....... 70
Section 11.14 Employer Proportionate Share of Annual Changes in Unfunded Vested Liability .. 70
Section 11.15 Apportionment Base Period ...................................................................... 71
Section 11.16 Base Period Employer Contributions ....................................................... 71
Section 11.17 Pre-1980 Terminated Unit Contributions ................................................ 72
Section 11.18 Employer Proportionate Share of Annual Charges for Reallocated Liability .. 72
Section 11.19 Transfers of Liability ................................................................................ 72
Section 11.20 De Minimis Reduction .............................................................................. 73
Section 11.21 20-Year Payment Limitation .................................................................... 73
Section 11.22 Insolvency Reduction ............................................................................... 73
Section 11.23 Partial Withdrawal Liability - Amount .................................................... 73
Section 11.24 Payment of Withdrawal Liability ............................................................. 73
Section 11.25 Notice and Collection of Withdrawal Liability ........................................ 74
Section 11.26 Withdrawal Liability Review .................................................................... 74
Section 11.27 Withdrawal Liability Arbitration .............................................................. 75
Section 11.28 Withdrawal Liability Default .................................................................... 75
Section 11.29 Withdrawal Liability Collection Litigation ............................................... 75
Section 11.30 Withdrawal Liability Abatement - Construction Industry Employers ....... 76
Section 11.31 Withdrawal Liability Abatement - Other Employers ................................ 76
Section 11.32 Mass Withdrawal ...................................................................................... 76

ARTICLE 12.    TAX RULES AND AFFILIATED EMPLOYERS .................................... 76

Section 12.01 Non-Discrimination .................................................................................. 76
Section 12.02 Affiliated Employer Participation ............................................................ 77
Section 12.03 Conditional Adoption ............................................................................... 77
Section 12.04 General Affiliated Employer Rules ........................................................... 77
Section 12.05 Limitation Employer ................................................................................. 78
Section 12.06 Top-Heavy Requirements ......................................................................... 78
Section 12.07 Maximum Benefit Limit ........................................................................... 80
Section 12.08 Defined Benefit Plan Limit ...................................................................... 80
Section 12.09 Section 415 Aggregation .......................................................................... 82
Section 12.10 Maximum Benefits Coordination ............................................................. 82
Section 12.11 Restricted (High-25) Employees ............................................................... 82

ARTICLE 13.    DEFINITIONS ......................................................................................... 83

## IUPAT INDUSTRY PENSION PLAN                                    PAGE 63

(b) The Trustees may delegate or assign responsibility for investment (including acquisition and disposition of assets) to an Investment Manager on the written acknowledgment of the Investment Manager of its status as a fiduciary with respect to a Plan.

### Section 10.04  Source of Benefit Payments

Plan assets will be the sole source for the payment of benefits under the Plan. This Plan has been established on the basis of an actuarial calculation that has established, to the extent possible, that the contributions will, if continued, be sufficient to maintain the Plan on a permanent basis, and fulfill the funding requirements of ERISA.

### Section 10.05  Expenses.

All expenses of establishing, administering and terminating the Plan and Trust with respect to the Plan will be paid from Plan assets.

### Section 10.06  Non-Reversion.

It is expressly understood that in no event shall any of the assets of the Plan revert to the employers or be subject to any claims of any kind or nature by the Employers.

### Section 10.07  Employer Contributions.

An Employer will pay contributions to the Plan or Trust, for allocation to the Plan as directed by the Trustees, as required by law, a Collective Bargaining Agreement, a Participation Agreement or the Trust Agreement and pay interest, liquidated damages and costs of collection (including audit and attorney fees) as required by the Collective Bargaining Agreement, Participation Agreement, Trust Agreement or law.

### Section 10.08  Irrevocability of Contributions

Contributions to the Trust or Plan are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC 4972) as provided by law.

### Section 10.09  Qualified Military Service Contributions

(a) In accordance with applicable federal law, the Trustees may charge an Employer for contributions (without interest) with respect to Qualified Military Service after October 12, 1994 upon a timely return to work with the Employers under the Plan.

(b) Absent other resolution of the Trustees, the charge will equal

      (1)    the current contribution rate(s) for similarly-situated active Eligible Employees during the period of Qualified Military Service, multiplied by

      (2)    average contributory hours for the Employee during a period, equal to the lesser of a period equal to the term of Qualified Military Service or twelve (12) months before the Qualified Military Service began.

(c) Absent other resolution of the Trustees, the charge shall be allocated to Employers as follows.

      (1)    Contributions for Qualified Military Service of less than thirty (30) days will be charged to the last Employer before Qualified Military Service began.

      (2)    Contributions for longer Qualified Military Service will be charged in proportion to an Employee's Hours of Service in Covered Employment with each Employer in the twelve (12) month period before Qualified Military Service began. Contributions chargeable to an Employer which are not collectible will be reallocated as if the Employee had no Hours of Service in Covered Employment with the uncollectible Employer.

*Section 10.10  Return of Mistaken Contributions*

(a) The Trustees may return amounts erroneously paid to the Trust as allowed by law.

(b) A contribution or withdrawal liability payment made by reason of a mistake of fact or law, other than a mistake relating to the qualification of a Plan under IRC 401 or the exemption of the Trust from tax under IRC 501(a), may be returned within six (6) months after a determination of a mistake by the Trustees.

(c) A contribution which is conditioned on initial qualification of a Plan may be returned within one (1) year after an adverse determination, provided an application for determination is filed by the time prescribed for filing the Employer's return for the taxable year in which the Plan was adopted.

(d) A contribution, which is conditioned on deductibility under IRC 404, may be returned (to the extent disallowed) within one (1) year after disallowance.

*Section 10.11  Delinquent Employers*

(a) The Trustees may terminate a person or organization as an Employer if the person or organization files to make contributions for more than 90 days after the due date. The action of the Trustees may create a Complete Withdrawal or Partial Withdrawal from the Plan by the Employer.

(b) To once again become an Employer, the person or organization must post a bond in the amount of twice the delinquency and pay all current and delinquent contributions within three

IUPAT INDUSTRY PENSION PLAN                                    PAGE 65

months of the posting of the bond. If the Employer fails to do so, the bond shall be forfeited and the Employer will not be permitted to resume status as an Employer.

(c) If the Employer satisfies the foregoing conditions and once again is allowed to participate on that basis, the bond will be returned if reports and contributions remain current for a period of one year following reinstatement.

(d) The Trustees and the Union retain the right to enforce payment of delinquencies in accordance with other provisions of this Plan, the Trust Agreement, the applicable Collective Bargaining Agreement or Participation Agreement and applicable law.

*Section 10.12  Collection of Delinquent Contributions*

(a) In the case of a Contributing Employer that fails to make the contributions to the Plan for which it is obligated, in accordance with the terms and conditions of a collective bargaining agreement, the Trustees may bring an action on behalf of the Plan pursuant to ERISA 502(g)(2) to enforce the Contributing Employer's obligation.

(b) In any such action in which judgment is awarded in favor of the Plan, the Contributing Employer shall pay to the Plan, in accordance with the court's award:

    (1)    the unpaid contributions,

    (2)    interest on the unpaid contributions, determined at the rate for underpayment of federal income taxes under IRC 6621

    (3)    liquidated damages equal to the greater of

        (A)    the amount of interest charged on the unpaid contributions, or

        (B)    20 percent of the unpaid contributions,

    (4)    reasonable attorneys' fees and costs of the action, and

    (5)    such other legal or equitable relief as the court deems appropriate.

(c) Nothing in this section shall be construed as a waiver or limitation on the rights or ability of the Plan, Trustees or Union to enforce a Contributing Employer's contribution obligation in any other type of proceeding.

## AMENDMENT TO THE
## INTERNATIONAL PAINTERS AND ALLIED TRADES INDUSTRY PENSION PLAN
### (as restated effective January 1, 1999)

Major Topic:              Title to Plan Assets

General Effective Date:   January 1, 2004

The undersigned, pursuant to authorization of the Trustees of the International Painters and Allied Trades Industry Pension Fund, approve and ratify the following changes to the International Painters and Allied Trades Industry Pension Plan, as amended and restated as of January 1, 1999 and amended to date, ("Plan") and amend the Plan accordingly as set forth herein.

WHEREAS, the Trustees desire to amend the Plan to clarify that assets of the Plan or Trust include contributions that are due and payable by Employers as well as contributions that have been paid to the Plan or Trust, and

WHEREAS, the full board of Trustees has authorized the Co-Chairman to execute an amendment to reflect discussion and changes approved by the full board.

THEREFORE, the Plan shall be amended, effective on or after January 1, 2004 unless otherwise provided by the amendment or applicable law, in the following manner.

1.    Amend *Section 10.08 (Irrevocability of Contributions)* to read as follows (amended language is in bold italics):

Contributions *by Employers* to the Trust or Plan *are plan assets and* are irrevocable. The Employers will have no right, title or interest in contributions once paid to the Plan or Trust *or in contributions owed to the Trust or Plan in accordance with a collective bargaining agreement, the Trust Agreement, a Participation Agreement or applicable law but not yet paid* and no Plan assets will revert to the Employers. The Trustees may return amounts paid by an Employer due to a mistake of fact, payments conditioned on qualification of the Plan or deductibility of a payment and correct any excess contributions (as defined in IRC

4972) as provided by law.

Witness our signatures, pursuant to authority granted by the full Board of Trustees, to memorialize our action and the prior resolutions of the Trustees to amend and restate the Plan.

EMPLOYER TRUSTEES

By: _____
Ralph A. Trallo, Co-Chair

Date: _October 14_, 2003

UNION TRUSTEES

By: _____
James A. Williams, Co-Chair

Date: _October 14_, 2003

t22882-1

JS-44
(Rev. 2/01 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| International Painters and Allied Trades Industry Pension Fund, et al. | Rogers Industries, LLC d/b/a Rogers Industries, 4800 Coyle Road, Owings Mills, MD  21117 |

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF _____
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: In land condemnation cases, use the location of the tract of land involved.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Kent Cprek, Esquire
Jennings Sigmond, P.C., The Penn Mutual Towers, 16th Floor,
510 Walnut Street, Phila., PA 19106
(215) 351-0615

ATTORNEYS (IF KNOWN)

## II BASIS OF JURISDICTION
(SELECT ONE BOX ONLY)

○ 1  U.S. Government Plaintiff

○ 2  U.S. Government Defendant

◉ 3  Federal Question (U.S. Government Not a Party)

○ 4  Diversity (Indicate Citizenship of Parties in item III)

## III  CITIZENSHIP OF PRINCIPAL PARTIES
(FOR DIVERSITY CASES ONLY!)
(SELECT ONE FOR PLAINTIFF AND ONE FOR DEFENDANT)

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV.  CASE ASSIGNMENT AND NATURE OF SUIT
(Select one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

☐ 410  Antitrust

○ **B. Personal Injury/ Malpractice**

☐ 310  Airplane
☐ 315  Airplane Product Liability
☐ 320  Assault, Libel & Slander
☐ 330  Federal Employers Liability
☐ 340  Marine
☐ 345  Marine Product Liability
☐ 350  Motor Vehicle
☐ 355  Motor Vehicle Product Liability
☐ 360  Other Personal Injury
☐ 362  Medical Malpractice
☐ 365  Product Liability
☐ 368  Asbestos Product Liability

○ **C. Administrative Agency Review**

☐ 151  Medicare Act

**Social Security:**
☐ 861  HIA ((1395ff)
☐ 862  Black Lung (923)
☐ 863  DIWC/DIWW (405(g)
☐ 864  SSID Title XVI
☐ 865  RSI (405(g))

**Other Statutes**
☐ 891  Agricultural Acts
☐ 892  Economic Stabilization Act
☐ 893  Environmental Matters
☐ 894  Energy Allocation Act
☐ 890  Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)**   OR   ○ **F. Pro Se General Civil**

**Real Property**
☐ 210  Land Condemnation
☐ 220  Foreclosure
☐ 230  Rent, Lease & Ejectment
☐ 240  Torts to Land
☐ 245  Tort Product Liability
☐ 290  All Other Real Property

**Personal Property**
☐ 370  Other Fraud
☐ 371  Truth in Lending
☐ 380  Other Personal Property Damage
☐ 385  Property Damage Product Liability

**Bankruptcy**
☐ 422  Appeal 28 USC 158
☐ 423  Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535  Death Penalty
☐ 540  Mandamus & Other
☐ 550  Civil Rights
☐ 555  Prison Condition

**Property Rights**
☐ 820  Copyrights
☐ 830  Patent
☐ 840  Trademark

**Forfeiture/Penalty**
☐ 610  Agriculture
☐ 620  Other Food &Drug
☐ 625  Drug Related Seizure of Property 21 USC 881
☐ 630  Liquor Laws
☐ 640  RR & Truck
☐ 650  Airline Regs
☐ 660  Occupational Safety/Health
☐ 690  Other

**Federal Tax Suits**
☐ 870  Taxes (US plaintiff or defendant)
☐ 871  IRS-Third Party 26 USC 7609

**Other Statutes**
☐ 400  State Reapportionment
☐ 430  Banks & Banking
☐ 450  Commerce/ICC Rates/etc.
☐ 460  Deportation
☐ 470  Racketeer Influenced & Corrupt Organizations
☐ 810  Selective Service
☐ 850  Securities/Commodities/Exchange
☐ 875  Customer Challenge 12 USC 3410
☐ 900  Appeal of fee determination under equal access to Justice
☐ 950  Constitutionality of State Statutes
☐ 890  Other Statutory Actions  (if not administrative agency review or  Privacy Act)

| ○ G. Habeas Corpus/2255 | ○ H. Employment Discrimination | ○ I. FOIA/PRIVACY ACT | ○ J. Student Loan |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability, age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. Labor/ERISA (non-employment) | ○ L. Other Civil Rights (non-employment) | ○ M. Contract | ○ N. Three-Judge Court |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

⊙ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)

29 U.S.C. Section 185(a), 1132 and 1145 Action to collect unpaid contributions due under a collective bargaining agreement

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ☐ ACTION UNDER F.R.C.P. 23   DEMAND $ `_____`   Select YES only if demanded in complaint   JURY DEMAND: ☐ YES ☒ NO

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  ☐ YES ☒ NO   If yes, please complete related case form.

DATE March 20, 2008    SIGNATURE OF ATTORNEY OF RECORD _Kurt Cook_

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.    COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed _only_ if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the _primary_ cause of action found in your complaint. You may select only _one_ category. You _must_ also select _one_ corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.